**MATTHEW RIGHETTI**   (SBN #121012)
matt@righettilaw.com
**JOHN GLUGOSKI**      (SBN #191551)
jglugoski@righettilaw.com
**RIGHETTI • GLUGOSKI, P.C.**
456 Montgomery Street, Suite 1400
San Francisco, CA  94104
Telephone:     (415) 983-0900
Facsimile:     (415) 397-9005

**Attorneys for PLAINITIFFS**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE RUTTI, GERSON ANAYA, <br><br> Plaintiffs, <br><br> vs. <br><br> LOJACK CORPORATION, INC., and DOES 1-50, inclusive <br> Defendants. <br><br> _____ | CASE NO. CV11-01372  DOC-JC <br><br> **PLAINTIFFS' MOTION TO REMAND** <br><br> [Los Angeles Superior Court Case No. BC381043] <br><br> Date:  April 18, 2011 <br> Time: 8:30 a.m. <br> Court Room: 9D <br><br> **Honorable David O. Carter** |

1

# TABLE OF CONTENTS

                                                                                    **Page**

I.      INTRODUCTION ...................................................................1

II.     STATEMENT OF FACT RELEVANT TO
        RESOLVING THIS MATTER..........................................6

III.    STANDARD OF REVIEW................................................11

IV.     ARGUMENT.....................................................................13

        a.      Framed as a new removal petition,
                Defendant is actually seeking reconsideration
                of this Court's two earlier orders...............................13

        b.      Defendant In Attempting To Meet Its
                Heightened Burden to Show that the Plaintiffs'
                Claims Meet the $5,000,000 Seeks To Mislead
                The Court and Ignore Its Own Evidence....................20

        c.      Defendant Ignores Dramatic Evidence
                Inconsistent With Federal Jurisdiction.......................25

V.      DEFENDANT MUST PAY PLAINTIFFS COST
        AND PAY SANCTIONS FOR ITS IMPROPER
        REMOVAL .......................................................................27

        a.      Defendant Did Not Have an Objective
                Reasonable Basis For Removal and Should
                Pay Plaintiffs' Costs and Attorneys Fees for
                Bringing the Motion to Remand................................27

VI.     CONCLUSION...................................................................28

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Abrego v. Dow Chem. Co.*
 443 F.3d 676 (9th Cir. 2006)..............................…………………….12

*Arellano v. Home Depot U.S.A., Inc.*
245 F. Supp. 2d 1102 (S.D. Cal. 2003)...................................................26

*Baddie v. Berkeley Farms, Inc.*
64 F.3d 487 (9th Cir., 1995)...…..........…………………………………27

*Bartnikowski v. NVR, Incorporated*
2009 WL 106378 .............................................................20, 21, 22, 23

*Bender v. Williamsport Area Sch. Dist.*
475 U.S. 534 (1986).......................................................................11

*Boggs v. Lewis*
863 F.2d 662 (9th Cir. 1988)........................................................26

*Burns v. Windsor Ins. Co.*
(11th Cir. 1994) 31 F3d 1092…………………………..…........8, 11, 20

*Carvalho v. Equifax Info. Servs., LLC*
2010 U.S. App. Lexis 25821 (9th Cir. 2010)....................................17, 18

*Cohn v. Petsmart, Inc.*
281 F.3d 837 (9th Cir. 2002)...........................................................26

*Duncan v. Stuetzle*
76 F.3d 1480 (9th Cir. 1996)…………………………….…........11

*Dunn v. Gaiam*
166 F. Supp. 2d 1273 (C.D. Cal. 2001)..........................................15, 14

*Durham v. Lockheed Martin Corp.*
445 F.3d 1247 (9th Cir. 2006)........................................................17, 18

1
2  *Fifty Assocs. v. Prudential Ins. Company of America*
   446 F.2d 1187 (9th Cir. 1990).......................................................................11

3  *Gaus v. Miles, Inc.*
4  980 F.2d 564 (9th Cir.1992) …………………….…...........................11

5  *Guglielmino v. McKee Foods Corporation*
6  506 F.3d 696 (9th Cir. 2007).................................................................13, 12

7  *Hopkins v. Andaya*
8  958 F2d 881(9th Cir. 1992)................................................................16

9  *Kaneshiro v. North American Co. For Life and Health*
10 496 F.Supp. 452 (D. Hawaii 1980).  ……………………...……….............11

11 *Lake Hill Motors, Inc. v. Jim Bennett Yacht Sales, Inc.*
12 246 F3d 752(5th Cir. 2001)................................................................16

13 Lowdermilk v. United States Bank National Association,
14 479 F.3d 994 1003 9th Cir., 2007.............................................. 8, 12, 20

15 *Martin v. Franklin Capital Corp.*
16 546 U.S. 132, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005).....................…...............27

17 *Muniz v. Pilot Travel Ctrs. LLC,*
18 2007 WL 1302504, (E.D. Cal. May 1, 2007)...................................................13

19 *Oto v. Metropolitan Life Ins. Co.*
20 (7th Cir. 2000) 224 F3d 601...............................................................16

21 *Ray v. Trimspa Inc.,*
22 2006 WL 5085249 (C.D. Cal. 2006)........................................................15

23 *Sanchez v. Monumental Life Ins. Co.*
24 102 F.3d 398 (9th Cir. 1996)..............................................................13

25 *Santamarina v. Sears, Roebuck & Co.*
26 466 F3d
27 572(2006)…….................................................................................15

28

*School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*
5 F3d 1263..................................................................................17

*Tompkins v. Basic Research LL*
2008 WL 1808316, at *3 (E.D. Cal. Apr. 22, 2008)...................................13

*Valdez v. Allstate Ins. Co.*
(9th Cir. 2004) 372 F3d 1115.........…………………………………………13, 20

*Wilson v. Intercollegiate (Big Ten) Conj Athletic Assocation*
668 F.2d 962 (7th Cir. 1982)...................................................15

## FEDERAL STATUTES

28 U.S.C. § 1447(c) ...…………………….…………….………....................11, 27

28 U.S.C.A. §§ 1441…………………………………….. ...................11

28 U.S.C. § 1446(b) ......................................................11, 18, 19

## STATE STATUTE

California Rules of Court, Rule 3.769....................................................19

## OTHER AUTHORITIES

The Reference Manual for Scientific Evidence: Reference Guide on Survey
Research p. 236........................................................................23

## I.   INTRODUCTION

Plaintiffs seek an order remanding the above-entitled action to the Superior Court of California, County of Los Angeles. This is now the *third* time this Court has been called upon to examine whether these claims meet the requirements for federal jurisdiction.   On October 2, 2007, the Court dismissed the state law claims finding no federal subject matter jurisdiction.   Neither side objected to the Court's determination at that time – and the Court's decision was made only after this Court gave Defendant an opportunity to make a showing why the federal court should retain jurisdiction of the state law claims.

Thereafter, Plaintiffs properly re-filed the state law claims in state court. Defendant promptly removed the case to federal court claiming that Plaintiffs' claims exceeded the $5M threshold under CAFA.   This Court granted Plaintiffs' remand motion and the state claims were remanded back to state court on June 4, 2008 (See, Decl. of M. Righetti, Ex. 1, Order dated June 4, 2008, Case No. SA CV 08-06 DOC (JCx) Docket 21).   In doing so, the Court made four important findings pertinent to the present motion:

> 1. "[T]he Court notes at the outset that it is concerned about the impact Defendants' actions have had on Plaintiffs and on public resources  by engaging in procedural posturing with the Courts;"

2

2.  Defendant manufactured "overinflated calculations" when it sought to meet the "amount in controversy" by extrapolating the named Plaintiff, Rutti's claims to the class at large;

3.  Defendant was wrong to "cite to evidence on the record regarding the value of the actual claims when it is favorable to them, but then make broad, sweeping allegations based on assumptions when the evidence is not favorable to support their calculations of the amount in controversy."

Not to be deterred, Defendant has <u>again</u> removed these very same claims to federal court.  Defendant's most recent removal not only suffers from the same defects noted by the Court in its June 4, 2008 remand order, but is also untimely since, although Defendant claims (as it must) that it is based on "newly discovered" information, it is actually based exclusively on information *known* to Defendant when it removed this action in January 2008, and relies on the same defective "extrapolation" arguments made by Defendant in its January 2008 removal. Incredibly, Defendant abjectly ignores the fact that all the evidence relied upon by Defendant in its attempt to establish the amount in controversy is information that

3

was known to Defendant at the time of Defendant's first removal attempt in January 2008.   Likewise, Defendant continues to ignore all evidence inconsistent with its argument, including, a) written damages calculations by Defendant's expert, FTI's Mr. Buchanan, that contradict his sworn declaration, b) Defendant's very recent written settlement demand asserting a value for the California claims of well under $5M, and c) the declarations of 33 California class members relied upon by Defendant in this case to support Defendant's asserted defenses (See, Docket No. 78, California Lojack Class Declarations filed by Defendant in Case No. SACV06-350 DOC(RNBx)).   <u>Defendant has even argued vigorously to this Court that this evidence shows Plaintiffs' claims should be dismissed since they </u>don't even meet the *de minimus* doctrine.[1]

At the time of Defendant's January 2008 removal, Defendant was in possession of both Plaintiff Rutti's testimony and Plaintiff's declarations from

---

[1]      Ironically, Defendant claims its extrapolation is consistent with Plaintiffs' trial methodology plan, yet this contention is false.  Plaintiffs have made clear throughout (including in their January 2011 supplemental discovery responses) that, after the certification and opt-out period, Plaintiffs intend to establish liability and damages based on a statistical *random sampling* methodology – a procedure that is well accepted in the scientific community.  At no time have Plaintiffs ever claimed that one can extrapolate from a non-random sampling.  Defendant knows well that to do so, as it purports to do here, offends the core science behind statistical sampling.

putative class members. The only difference between the two removal petitions is that in its first removal (2008) Defendant improperly speculated by extrapolating damages to the entire putative class by relying solely on one person Rutti -- and ignoring all evidence to the contrary as well as the 16 declarations that are the basis for this motion.[2]  This time around, Defendant ignores Mr. Rutti's testimony and purports to meet the "amount in controversy" requirement by improperly extrapolating damages to the entire class in reliance on the sixteen declarations (none randomly selected) that have been in Defendant's possession since 2007 when they were submitted by Plaintiffs for purposes of certification to this very Court in 2007.

The reason for Defendant's most recent gambit at forum shopping is readily evident.  Plaintiffs prevailed in state court on their motion for class certification and the court of appeal affirmed the trial court's decision.  (See, Ex. 2 and Ex. 3 respectively).   Unhappy with the state court rulings rejecting its arguments, Defendant removal amounts to an untimely quest seeking to have this Court reconsider its previous two rulings confirming lack of federal jurisdiction – all so

---

[2]    Defendant's extrapolation methods, then and now, do not pretend to pass muster under appropriate statistical sampling protocols.  See, pages 21-24 herein.

5

Defendant can try to mount another challenge to class certification in federal court.[3] Confirming the Court's suspicions set forth in the last remand order, Defendant continues to use the removal statutes as a means to try and achieve "procedural posturing with the Courts."

Plaintiffs respectfully move this Court to enter an order remanding this case to the Los Angeles County Superior Court. As this is now the second time Plaintiffs have had to expend time and resources to counter Defendant's serial removal maneuvers, Plaintiffs also respectfully seek an order requiring Defendant to pay attorneys fees, costs to Plaintiffs as allowed by law.

## II.   STATEMENT OF FACTS RELEVANT TO RESOLVING THIS MATTER.

On April 5, 2006, Plaintiff Rutti filed the Complaint in the Rutti v. Lojack matter (Case No. SA CV06-0350-DOC (RNBx)) in Federal Court alleging both

---

[3] Ironically, Defendant argued in state court that each class member's claim had to be analyzed individually in state court. Now on removal, Defendant argues you no longer need individual adjudications. Further, they conflate the laws of statistics by arguing that you can extrapolate from a small group of non-randomly selected class members, yet there is no support in its papers from any expert confirming that such extrapolation is appropriate. In fact, Defendant's expert FTI, Daniel Slottje confirms that you need a random sample and significant sample size. See Ex. 4 attached to Declaration of Matthew Righetti in Support of Motion to Remand filed herewith.

6

violations of the F.L.S.A. and the California Labor Code.  Federal jurisdiction was

properly invoked in that case since F.L.S.A claims were alleged.

On February 15, 2007, Defendant filed a motion for summary adjudication

that came on for hearing on August 13, and 15 2007.

On August 16, 2007, the Court granted summary judgment as to all federal

law causes of action in the complaint. (A true and correct copy of Hon. Carter's

Order of August 16, 2007, is marked and attached to the Declaration of Matthew

Righetti as Exhibit 5.)

On August 24, 2007, the Court issued an order to show cause to all parties

as to why the matter should not be dismissed for lack of subject matter

jurisdiction.  (A true and correct copy of the August 24, 2007 Order is attached to

the Declaration of Matthew Righetti as Exhibit 6.) The Court provided ample

opportunity for any party to demonstrate why the Court should retain jurisdiction

over the remaining state law claims. (*Id.* at pp. 1 - 2.)

Defendant failed to make any such showing, objection, or argument asking

the federal court should retain jurisdiction of the state law claims.  Having received

no arguments to retain jurisdiction, on October 2, 2007, this Court dismissed the

remaining California state claims in that case for lack of subject matter jurisdiction.

(A true and correct copy of the Court's Order of October 2, 2007, is marked and

attached to the Declaration of John Glugoski as Exhibit 7.)

7

On November 20, 2007, Plaintiffs Mike Rutti and Gerson Anaya filed a class action in the Los Angeles County Superior Court asserting the state law claims that had been dismissed by this Court for lack of subject matter jurisdiction. (A true and correct copy of the Complaint entitled *Rutti et. al. v. Lojack Corporation, Inc.,* Case No. BC 381043 is marked and attached to the Declaration of Matthew Righetti as Exhibit 8.). The complaint is comprised of *solely* California Labor Code violations and based on the same facts and allegations made in the federal action in support of the state law claims. Specifically, Plaintiffs allege violations of California wage and hour laws -- the same claims, which were at issue in the first Rutti v. Lojack matter (Case No. SA CV06-0350-DOC (RNBx) and which this Court dismissed (i.e., failure to provide meal and rest breaks, failure to pay wages, failure to reimburse business expenses and California's Unfair Competition Law). The complaint alleges Plaintiffs' belief that the amount in controversy does not meet the requirements for federal court jurisdiction. Decl. of Matthew Righetti, Exhibit 8, para. 1. Contrary to Defendant's arguments, Plaintiffs "are not obligated to overstate their damages to satisfy the defendant's interest in a federal forum, but my plead conservatively to secure a state forum." *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994 at 1003 99th Cir., 2007. Plaintiffs' allegations require that Defendant prove federal jurisdiction with "legal certainty."

8

On January 2, 2008, Defendant challenged Plaintiffs' jurisdictional allegations by filing a notice of removal. Defendant claimed that, notwithstanding Plaintiffs' allegations the state court claims exceeded the $5M threshold for federal jurisdiction under CAFA. (Docket 1). Finding Defendant's calculations to be wanting, the Court granted Plaintiffs' motion for remand on June 4, 2008. (Docket 21).

Defendant extrapolates from sixteen declarations it has had since 2007 and ignores several dozen declarations Defendant submitted to this Court from California based putative class members in connection with its motion for summary adjudication (to support its argument that the class members claims are worthless as they do not even pass muster under the *de minimus* doctrine) (See, Docket No. 78, California Lojack Class Declarations filed by Defendant in Case No. SACV06-350 DOC(RNBx)).

Using precisely the same tactics that were frowned upon by this Court in its June 4, 2008 remand order, Defendant "cites to evidence on the record regarding the value of the actual claims when it is favorable to them, but then make broad, sweeping allegations based on assumptions when the evidence is not favorable to support their calculations of the amount in controversy." In this regard, Defendant continues to utterly ignore its earlier evidentiary submissions -- instead arguing the *opposite* as if its declarations and *de minimus* arguments previously made by it do

9

not exist.  Defendant's "flip-flops" are stunning in that it now argues that the very class members it believes have claims that are virtually worthless (i.e., not even worthy of judicial relief per the *de minimus* doctrine), are now worth millions of dollars.  Defendant's lack of credibility before this Court is inexcusable – one day Defendant seeks a denial of certification by arguing the claims are worthless – and the next day Defendant seeks to leapfrog the value of the claims over the $5,000,000.00 CAFA threshold.

Defendant asserts, without any rational basis, that the potential loss asserted by a non-random group of declarants should be willy-nilly extrapolated to all class members --thus concluding that all class members must have incurred the same losses as this group of 16 individuals; not only is this kind of "math-e-magic" extrapolation scientifically erroneous, but also on the motion for summary adjudication Defendants submitted testimony through putative class member declarations that putative class members incurred little to no damages (i.e., a few moments of uncompensated time here and there at best).  (See, Docket No. 78, California Lojack Class Declarations filed by Defendant in Case No. SACV06-350 DOC(RNBx)).

In addition, Defendant fails to make any showing as to the hourly rates of pay, the actual meal and rest breaks received and/or length of employment for any putative class members. Not only is this the kind of information known to defendant

but it is also vitally necessary to make the requisite showing that this matter has been properly removed.

After Defendant filed its recent notice of removal, the parties engaged in a detailed email and telephonic meet and confer.  In the weeks leading up to this filing.  Defendant refused to remand the case and this motion was timely filed (A true and correct copy of Meet and Confer correspondence is marked and attached to the Decl. of M. Righetti as Ex. 9.)

## III.   STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the United States Constitution and Congress. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "Because of the 'Congressional purpose to restrict the jurisdiction of the federal courts on removal,'" courts must strictly construe the removal statute and rule against removal "if there is any doubt as to the right of removal in the first instance." *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).  There is a strong presumption **against** the exercise of removal jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)(emphasis added).  The removal statute is strictly construed, and the court must reject federal jurisdiction if there is **any doubt** as to whether removal was proper. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996)[emphasis added]; 28

11

U.S.C.A. §§ 1441 et seq., 1447(c).  Any doubts as to removability are resolved in favor of remanding the case to state court.  *Gaus v. Miles, Inc., supra*, 980 F.2d at 566; *Kaneshiro v. North American Co. For Life and Health* 496 F.Supp. 452, 461 (D. Hawaii 1980); also see, *Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1190 (9th Cir. 1990). Federal law requires that if a case is removable from the outset, the party seeking removal must file the notice of removal within thirty (30) days after service. 28 U.S.C. § 1446(b).

Under CAFA, this Court has subject matter jurisdiction over a class action in which: (1) there are 100 or more putative class members; (2) at least some of the members of the putative class have a different citizenship from the defendant; and (3) the aggregated claims of the putative class members exceed the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d). "'[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction.'" *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007) (quoting *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (per curiam)).

For purposes of removal under CAFA, the Ninth Circuit has recently "recognized varying burdens of proof depending on the situation and the nature of the plaintiff's complaint." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). If the complaint alleges damages in excess of the federal amount-in-

controversy requirement, the requirement is presumptively satisfied unless "it appears to a 'legal certainty' that the claim is actually for less than the jurisdictional minimum." *Abrego Abrego*, 443 F.3d at 683 n.8 (citation omitted). If the complaint specifically pleads on its face an amount of damages that is less than the federal jurisdictional minimum, the "party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met." *Lowdermilk*, 479 F.3d at 1000. If, however, "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," the preponderance of evidence standard applies. *Guglielmino*, 506 F.3d at 699; *see Tompkins v. Basic Research LL*, No. CIV. S-08-224 LK K/DAD, 2008 WL 1808316, at *3 (E.D. Cal. Apr. 22, 2008).

The preponderance of the evidence standard requires the removing defendant to provide evidence establishing that "it is 'more likely than not' that the amount in controversy" is satisfied for diversity purposes. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (citation omitted). To make this determination, the court should consider, in addition to the complaint itself, "facts presented in the removal petition as well as any summary judgment-type evidence relevant to the amount in controversy at the time of removal," such as affidavits or declarations. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (internal quotations

13

and citation omitted); *see Muniz v. Pilot Travel Ctrs. LLC,* No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007).

## IV.   ARGUMENT

### a. Framed as a new removal petition, Defendant is actually seeking reconsideration of this Court's two earlier orders.

This Court's August 24, 2007, Order To Show Cause expressed its intention to dismiss the state law claims remaining in the original *Rutti v. Lojack* matter (Case No. SA CV06-0350-DOC (RNBx) for lack of subject matter jurisdiction.  Prior to dismissing the claims, the court afforded defendant an opportunity to make a showing why the court should retain jurisdiction. Defendant failed to make any argument or any showing. Accordingly, the court found no subject matter jurisdiction and dismissed the action.  Defendant took no steps to seek appeal or reconsideration of the court's dismissal for want of jurisdiction.

After the Court dismissed the action, Plaintiff took the necessary steps in state court to continue prosecuting his state law claims only to have Defendant remove the case to the federal court that just dismissed the same claims for lack of jurisdiction. In doing so, Defendant attempted to not only extrapolate damages from the testimony of Mr. Rutti, but also ignore all evidence suggesting a lower valuation. In its June 4, 2008 order, the Court found that method insufficient to meet Defendant's requisite burden.  Now, nearly two years later, Defendant extrapolates from sixteen declarations -- that were all in its possession at the time of its earlier

14

removal attempt – and again fails to mention substantial evidence to the contrary;
including its own settlement proposal and evidence refuting the sworn valuation
testimony of Defendant's expert, Michael Buchanan, that is heavily relied upon by
Defendant in its removal papers.  Defendant's belated attempt to revisit this issue
with information Defendant has had for years is not grounds for revival; rather, it is
tantamount to an untimely-filed motion for reconsideration and must be denied.

   If a party fails to remove an otherwise removable case within the initial thirty-
day period specified by Section 1446(b), the party waives its right of removal "for all
time, regardless of subsequent changes in the case." *Dunn v. Gaiam*, 166 F. Supp. 2d
1273, 1278–79 (C.D. Cal. 2001). Nevertheless, the removal right may be "revived" in
cases "where the plaintiff files an amended complaint that so changes the nature of
[the] action as to constitute 'substantially a new suit begun the day.'" *Id.* This
"narrow, judicially-created" revival exception would only apply if the amendment
altered the scope of the case "so drastically that the purposes of the [thirty]-day
limitation would not be served by enforcing it." *Wilson v. Intercollegiate (Big Ten)
Conj Athletic Assoc.*, 668 F.2d 962, 966 (7th Cir. 1982); *id.* at 1279. Circumstances
which may trigger the revival exception include: "(1) when a plaintiff attempts to
mislead a defendant about the true nature of its claim by including a less consequential
federal claim unlikely removed, and later, after the thirty-day window has expired,
amends the complaint to include a substantive federal claim, and (2) when the effect of

15

the change is to substantially constitute a new suit." *Ray v. Trimspa Inc.*, CV 06-6189 AHM (VBKx), 2006 WL 5085249, at *4 (C.D. Cal. 2006).

No "revival" circumstances are even remotely present here.   A cursory inspection of Defendant's "amount in controversy" arguments shows that Defendant's most recent removal merely relies on sixteen declarations that were in its possession at the time of its earlier removal petition in January 2008 as well as the first time this Court addressed the issue of federal jurisdiction in October 2007.   There exists no amended pleading, no new facts and no new evidence here.  This is undisputed.

For understandable reasons, Defendant studiously avoids labeling its most recent removal what it is -- an attempt to seek reconsideration of this Court's prior orders -- since its arguments do not meet the narrow grounds for reconsideration and it is well known that reconsideration is an "extraordinary remedy, to be used sparingly." A motion for reconsideration will not be granted "unless the District Court is presented with *newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law*." *Kona Enterprises, Inc. v. Estate of Bishop* (9th Cir. 2000) 229 F3d 877, 890 (emphasis added; internal quotes omitted) (dealing with post judgment motion); see *Santamarina v. Sears, Roebuck & Co.*, supra, 466 F3d at 572.

Here, Defendant offers no excuse as to why the sixteen declarations currently relied upon to support the amount in controversy were not provided to the Court in

16

the January 2008 removal papers when all those declarations were in Defendant's possession at that time. Neither a motion for reconsideration, nor a revival claim can be based on evidence that *could* reasonably have been discovered prior to the court's ruling. *Hopkins v. Andaya* (9th Cir. 1992) 958 F2d 881, 887, fn. 5; *Lake Hill Motors, Inc. v. Jim Bennett Yacht Sales, Inc.* (5th Cir. 2001) 246 F3d 752, 758; *Oto v. Metropolitan Life Ins. Co.* (7th Cir. 2000) 224 F3d 601, 606]   Similarly, a party's "failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.' " *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, supra, 5 F3d at 1263.

The above grounds are also limited by local rules. For example, in the Central District of California, a motion for reconsideration may be made only on grounds of:

- a "material difference in fact or law" from that presented to the court at the time of hearing that could not have been reasonably known to the party seeking reconsideration;
- emergence of new material facts or a change of law *occurring after* the hearing; or
- "a manifest showing of a failure to consider material facts" presented to the court at the hearing.

"No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." [CD CA Rule 7–18].

Seeking revival of the strict removal deadline, Defendant likens the instant case to *Carvalho v. Equifax Info. Servs., LLC*, 2010 U.S. App. Lexis 25821, *11 (9th Cir.

2010) and *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006). However, unlike the facts of this case, plaintiffs in *Carvalho* and *Durham* revealed specific and newly discovered information subsequent to and not ascertainable from the four corners of the complaint, thereby triggering the second thirty-day period designated by 28 U.S.C. 1446(b) for defendants to properly file notice of removal.

In *Carvalho*, where the complaint did not plead a specific amount of damages, the plaintiff's deposition revealed specific amount in controversy that exceeded the $5,000,000 CAFA requirement.   Similarly, in *Durham*, the plaintiff answers to interrogatories disclosed new information regarding federal officer jurisdiction not previously disclosed in the complaint.   In both of these cases on which Defendants' entire timeliness argument rests, the defendants became privy to *brand new information*, triggering the second 30-day period for removal set forth by 28 U.S.C. 1446(b).

Here, not only have Plaintiffs maintained the same position regarding the amount in controversy since their filing of the original complaint (with no amendments to the pleading whatsoever), but Defendant has been in possession of all the information currently relied upon in to support removal, including the sixteen declarations, since well *before* Defendant's first removal bid in January 2008. Unlike *Carvalho* and *Durham*, Plaintiffs have neither stated nor alluded to any new information that would constitute new grounds for removal of this case to federal

court, either by stating a specific amount in controversy, amending their pleading to add new theories, or any other grounds supporting federal jurisdiction.

Defendant claims that Plaintiffs' Supplemental Responses to Request for Admissions, Set One, have, for the first time, alerted them that the amount in controversy exceeds $5,000,000. This contention is false. Simply stating the obvious, i.e., "Plaintiffs do not agree to place a cap or otherwise limit the damages sought to recover on behalf of the class to $5 million" is not sufficient "new evidence" to meet the statutory requirement of "a copy of an amended pleading, motion, order or other paper" from which removability may first be ascertained. Supp. Reponses to Special Interrogatories; 28 U.S.C. 1446(b).  As the Honorable David O. Carter correctly concluded in his order granting Plaintiffs' Motion to Remand, "Defendants have failed to meet their burden to show, either by a preponderance of the evidence or a legal certainty, that the amount in controversy exceeds $5,000,000 to support jurisdiction pursuant to CAFA." Order Granting Plaintiffs' Motion to Remand, p. 4.  Nothing has changed in the interim except Defendants determination to now rely on declarations that it had ignored in its first removal attempt.

Defendant claims that since Plaintiffs will not stipulate on behalf of the entire class to a value less than $5M, Plaintiffs are thus falsely assessing the case.  Of course, Plaintiffs have made clear in their discovery responses that Plaintiffs do not

19

have the <u>power</u> to stipulate as to a sub-$5M damages amount for class members where class members have not been notified and afforded a right to opt-out and without required court approvals.   Defendant's "concept" of such a stipulation or "concession" as to damages is nonsense as it would not pass muster under California Rules of Court, Rule 3.769 which, consistent with federal law, requires strict compliance with due process notice procedures and court approvals in this regard. Plaintiffs do not have the power to unilaterally set a damage figure in this case at any particular "mark."

> **b.     Defendant In Attempting To Meet Its Heightened Burden to Show that the Plaintiffs' Claims Meet the $5,000,000 Seeks To Mislead The Court And Ignore Its Own Evidence.**

Plaintiffs pled in the Complaint filed in the State Court action that the case in controversy does not exceed the $5,000,000.00 threshold.   See Declaration of Matthew Rigehtti, Exhibit 3, para. 1.  When a plaintiff seeks less than $5,000,000 in a state court complaint, the defendant faces a heavy burden to support removal jurisdiction. In order to avoid remand, a defendant "must prove to a *legal certainty* that ... opposing counsel is *falsely* assessing the case or is *incompetently* doing so." (See *Burns v. Windsor Ins. Co.* (11th Cir. 1994) 31 F3d 1092, 1095 (emphasis added); *Valdez v. Allstate Ins. Co.* (9th Cir. 2004) 372 F3d 1115, 1116.

Contrary to Defendant's claim, Plaintiffs have in no way "falsely" assessed the value of this case.  Plaintiffs "are not obligated to overstate their damages to

20

satisfy the defendant's interest in a federal forum, but may plead conservatively to secure a state forum." *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994 at 1003 9th Cir., 2007). Defendant is uncomfortable with the heightened standard, yet the result is the same here even under the lesser "preponderance" standard.

In order to support the amount in controversy requirement under CAFA, a removing party cannot do what Defendant does here -- rely on assumptions or estimations. Similar to the case at bar, in *Bartnikowski v. NVR, Incorporated* (4th Cir. 2009), the appellate court upheld remand of a case seeking overtime compensation under the Fair Labor Standards Act (FLSA), because the defendant provided "assumptions" rather than admissible evidence as to the amount in controversy. (*Bartnikowski v. NVR, Incorporated* (4th Cir. 2009) 2009 WL 106378 *1.)

In *Bartnikowski*, the defendant attached a declaration from its payroll director, which estimated the average annual compensation to class members to North Carolina class members of the nationwide class. (*Id.* at 2.) Based on this figure, the defendant then extrapolated the average overtime wage for these class members and estimated that each class member worked an average of five (5) overtime hours per week. (*Ibid.*) The court found that this attempt at estimation of the class overtime hours per week was a "wholly unsupported assumption" as to the possible overtime worked by the entire class. (*Id.* at 4.) The court found this estimation unsupported,

21

in part, because (as here) defendant did not keep records of the number of overtime hours worked by class members. (*Ibid.*) Further, the court rejected the defendant's reliance on a single declaration from the named plaintiff, which discussed some hours worked by the plaintiff but did not address the number of overtime hours worked. (*Ibid.*)

*Bartnikowski* held that since courts have a "long standing tradition" that removal jurisdiction must be strictly construed in favor of remand, Defendant must meet its heavy burden of establishing the amount in controversy with *evidence* about the Plaintiff and the putative class rather than rank speculative assumptions. (*Id.* at 7.)

As in *Bartnikowski*, Defendant's Notice of Removal here is filled with speculative conclusions and assumptions rather than facts supported by admissible evidence. Stripped of the rhetoric, there is simply no evidence in the removal papers supporting Defendant's claim that the sixteen declarations relied upon by Defendant support a damages figure in excess of $5,000,000. By failing to provide evidentiary support, Defendant fails to meet its heightened burden of "legal certainty" to demonstrate that the CAFA requirements are met. In an effort to leapfrog the value of these claims over the $5,000,000.00 CAFA threshold, Defendant attempts to reverse-engineer federal jurisdiction pursuant to CAFA by assuming (although even this is unclear) that the class members all worked the same number of hours and

shifts and suffered the same number of violations, etc. as the named Plaintiff. Again, although it is not entirely clear that this is even how Defendant reached its conclusion as to the amount in controversy amount, common sense dictates that there is no rational basis to reach a conclusion that the amount of Plaintiff's claimed damages should be "willy-nilly" extrapolated to all class members.

There is simply no sound basis in logic or evidence for concluding that all class members must have worked the same hours for the same period of time at the same rate and suffered the same number of labor violations as the sixteen declarants. And, there is unexplained evidence to the contrary set forth in the declarations of California declarants obtained by Defendant as set forth above.   Defendant's extrapolations are devoid of any expert support for good reason – no statistician would ever conclude that one could take a small non-random selection of class member and extrapolate to the class at large.  The random selection process is the "glue" that holds together any statistical extrapolation process.  Without a random selection the sixteen declarations are anecdotal experiences and nothing more. Defendant's assumptive approach was rejected by the Court of Appeals in *Bartnikowski* where the Court held that a removing Defendant must support its conclusions with admissible evidence.  It was also rejected in this Court's June 4, 2008 remand order when Defendant sought to extrapolate based on one person,

Rutti.  Defendant engages in a kind of "math-e-magical" extrapolation that falls well short of the stringent removal requirements.

The scientific literature on this subject is set forth in the Reference Manual on Scientific Evidence.[4]  The Reference Manual provides that random sampling is a necessary requirement in order to extrapolate to the entire population and to control potential biases in results obtained. Without random sampling, there is no ability to validly extrapolate to the entire population.  This is important to note because the Plaintiff's declarations are not a "random sample" for purposes of extrapolation to the entire population. The importance of a random sample in order to extrapolate to the greater population is also confirmed as necessary by Defendant's own experts. FTI Managing Director, Daniel Slottje's testified in the *Bendar v. All-State* case as the necessity of random sampling for purposes of extrapolation (See Ex. 4,   Dr. Slottje simply confirmed what the literature on the use of representative evidence has uniformly held. The concept of random sampling is not a novel idea.

Defendant's reliance on Plaintiff's sixteen non-random declarants to extrapolate to the entire population for purposes of damages is fatally flawed and

---

[4]  The Reference Manual for Scientific Evidence may be found at http://www.fjc.gov/public/pdf.nsf/lookup/sciman00.pdf/$file/sciman00.pdf Chapter entitled Reference Guide on Survey Research p. 236-244.   This section also provides questions that the Court should ask in evaluating representative evidence to ensure that follows proper scientific methods. This inquiry includes who was in the sample, how was the sample drawn etc…

24

would not be accepted in any court of law as it would violate well-recognized scientific principles. Defendants would be hard pressed to find any statistical expert that would support Defendant's position where the facts are as they are here – and that likely explains why Defendant does not provide an expert opinion to support its non-random extrapolation methods.

Furthermore, Defendant's attempt to rely on sixteen non-randomly selected declarations also suffers from a further defect (i.e., inappropriate sample size). Setting aside the fact that Defendant has once again ignored thirty-three declarations of its own from class members claiming the "off the clock" work to be "de minimus," the Reference Manual for Scientific Evidence also addresses the importance of selecting a proper sample size.  As the Reference Manual explains, the confidence interval (aka "margin of error") is directly related to the sample size. The greater the sample size the higher the confidence interval (aka decreased margin of error).  Here, a non-randomly selected sample size of sixteen could not be extrapolated to the entire population with any degree of certainty. This is another example of Defendant "cherry picking" evidence to suit its agenda *de jour*.

**c. Defendant Ignores Dramatic Evidence Inconsistent With Federal Jurisdiction.**

Defendant's failure to acknowledge existing evidence unfavorable to its position is striking where that was a specific criticism made by this Court in the

25

June 4, 2008 order.  Defendant once again: cites only "to evidence on the record regarding the value of the actual claims when it is favorable to them, but then makes broad, sweeping calculations based on assumptions, when the evidence is not favorable to support their calculations of the amount in controversy" (Docket 21 Ex. 4 p.5).

Specifically – and in addition to declarations from California class members mentioned above -- Defendant relies heavily on the **recently drafted** Declaration of FTI Senior Managing Director, Mike Buchanan who "ran" the damages calculations. As part of the removal papers, Mr. Buchanan opines that damages are over $14M. Yet, this is the **same** Mike Buchanan who recently "ran" the numbers and opined that damages did not exceed $4M ($3,902,007 to be exact) (See Exhibit 1 to Declaration of John Glugoski filed under seal pursuant to Court Order, Docket No. 205, of Case No. SA CV06-0350-DOC(RNBx).   Several weeks ago, Mr. Buchanan generated a **detailed** and **elaborate** excel spreadsheet setting forth his findings that the damages are nearly one-fourth of what he now claims damages to be. Defendant represented in written correspondence that Mr. Buchanan's $3.9M figure is "extremely accurate." (See Exhibit 2 to Declaration of John Glugoski filed under seal pursuant to Court Order, Docket No. 205 of Case No.SA CV06-0350-DOC(RNBx).  It is astounding that Mr. Buchanan could provide sworn testimony to this Court that is so remarkably inconsistent.  Suffice to say, it calls into serious

question a) the valuations submitted by Defendant in its current removal papers, and

b) whether Defendant has met its burden of proof.

In this regard, a settlement letter is relevant evidence of the amount in controversy. See, *Cohn v. Petsmart, Inc.* 281 F.3d 837, 840 (9th Cir. 2002); *Arellano v. Home Depot U.S.A., Inc.* 245 F. Supp. 2d 1102 (S.D. Cal. 2003). This information, perhaps the most candid valuation expression by Defendant, is evaluated against the standard that "the removal statute is strictly construed against removal and any doubt must be resolved in favor of remand." *Boggs v. Lewis* (863 F.2d 662, 663 (9th Cir. 1988). It is astounding for Defendant, relying on Mr. Buchanan's declaration, to claim the amount in controversy is over $14M when just a few weeks ago, it represented that it had completed an "extremely accurate "estimate setting total damages in this case at $3,902,007. This disclosure exposes a not-so-clever scheme to try and manufacture CAFA jurisdiction.

## V.   DEFENDANT SHOULD PAY PLAINTIFFS' COSTS AND PAY SANCTIONS FOR ITS IMPROPER REMOVAL

### a. Defendant Did Not Have an Objective Reasonable Basis For Removal and Should Pay Plaintiffs' Costs and Attorneys Fees for Bringing the Motion to Remand

Defendant should be ordered to pay Plaintiffs' costs and attorneys fees associated with this Motion to Remand. The provisions of 28 U.S.C. section 1447(c) *require* that a losing defendant pay costs and attorneys to a prevailing plaintiff. (28 U.S.C. § 1447(c).) The costs incurred must be a direct result of

removal. (*Baddie v. Berkeley Farms, Inc.* 64 F.3d 487, 490 (9th Cir., 1995).)
Such an award is proper when "the removing party lacked an objectively
reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.* 546
U.S. 132, 126 S. Ct. 704, 163 L. Ed. 2d 547, 552-556 (2005). Further, the
Court in *Martin v. Franklin Capital Corp.* 546 U.S. 132 (2005) wrote that a
court awarding fees under 28 U.S.C. section 1447(c) "should recognize
Congress' desire to deter removals intended to prolong litigation and impose
costs on the opposing party..." (*Id.* at p. 551.)

Here, Defendant did not have an objectively reasonable basis for removal
of this matter to federal court.  Plaintiffs' complaint sets forth that the amount
in controversy does not meet the CAFA requirements of over $5,000,000.00.
A reasonable litigant would not have removed this case following the Court's
June 4, 2008 remand order. Defendant's Notice of Remand should be
recognized for what it is -- a frivolous attempt at forum shopping designed to
stall this litigation and force Plaintiffs to incur unnecessary cost and expense
in order to recover their legitimate recompense.

As a result of Defendant's improper removal and Plaintiffs' resulting
motion to remand, Plaintiffs' incurred costs of filing fees, service fees, and
costs incurred from preparing the motion. Plaintiffs seek reimbursement of
these expenses, as well as attorneys' fees, from Defendant in the amount of

$14,475.00 since defendant's removal was done in bad faith and lacked an objectively reasonable basis.

## VI.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests this Court to Order that that case be remanded to the Los Angeles County Superior Court, Plaintiff be awarded costs and attorneys fees, and Defendant and its attorneys of record be ordered to pay these sanctions.

DATED: March 16, 2011                    RIGHETTI • GLUGOSKI, P.C.
                                         /s/ Matthew Righetti

                                         _____
                                         MATTHEW RIGHETTI
                                         Attorneys for Plaintiffs